Opinion of February 28, 2006, Withdrawn; Affirmed and Opinion filed
April 13, 2006









 

Opinion of February
28, 2006, Withdrawn; Affirmed
and  Opinion filed April 13, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01004-CR

____________

 

DONALD ARTHUR
EUSTIS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 278th
District Court

Walker County, Texas

Trial Court Cause No. 22,229

 



 

O P I N I O N

Appellant Donald Arthur Eustis appeals his
conviction of aggravated assault, asserting (1) the evidence is legally
insufficient to support his conviction, and (2) the trial court denied his
right to confront and cross-examine witnesses used against him. We affirm. 

I.  Factual and Procedural Background








On November 10, 2002, Sergeant Ron Cleere
of the Huntsville Police Department received a call from dispatch.  He was asked to respond to an anonymous call
about a woman who was possibly in danger and may have been beaten by a baseball
bat.  The caller identified the woman as AJulianna@ and gave her
location in Huntsville.  Sergeant Cleere
immediately went to the residence in question and found appellant standing in
the yard talking to another man. 
Sergeant Cleere told appellant that he was there in response to a
welfare call and asked to speak to Julianna, who was later identified as
appellant=s wife. 
Appellant, clearly angry, stated that his wife was picking up their
children from school. 

Sergeant Cleere, under the belief that
appellant was lying, drove to the school to look for Julianna and the
children.  When he was unsuccessful in
locating them, he returned to the residence and questioned appellant again
about his wife=s whereabouts.  Appellant responded that his wife may have
gone shopping or Asomething@ with the children
because she was not at home.  Sergeant
Cleere, very concerned, asked appellant for permission to search the inside of
the house.  Appellant became defensive and
responded that he knew his Arights@ and refused
consent.  

Sergeant Cleere then attempted to call
Assistant District Attorney Jack Choate to determine whether he had probable
cause to enter the house without a warrant. 
At about that time, the couple=s two children,
whom appellant had claimed were with Julianna, arrived at the residence via the
school bus.  Sergeant Cleere summoned the
older child, Roxanne, who was about eight or nine years old at the time, to come
and talk to him.  Appellant yelled at
Roxanne, ADon=t talk to him, don=t say a word.@  Roxanne continued to walk toward Sergeant
Cleere, who explained to the young girl that he wanted to check and see if her
mother was alright.  Roxanne responded, AI=m not supposed to
tell.@  After this statement, Sergeant Cleere
directed another officer to take appellant into custody while he went into the
house to try and find Julianna.  Sergeant
Cleere located Julianna in the bathtub in 
dirty, brownish colored water. It was apparent that Julianna had been
severely beaten, and was in extreme pain. 
Her body was covered with bruises, contusions, and open wounds.








Sergeant Cleere called emergency medical
services and instructed Officer Dugas to arrest appellant.  Sergeant Cleere took several photographs of
Julianna and the crime scene while waiting for the medical personnel to
arrive.  Julianna was then transported to
Huntsville Memorial Hospital where she was treated for two broken arms, two broken
legs, multiple contusions and injuries that were all over her body.  The wounds were at different stages of
healing which indicated that they had been inflicted at various times.  After treatment, Julianna had either a splint
or a cast on each of her four extremities. 

Detective Slaven Richards of the
Huntsville Police Department visited Julianna in the hospital and took an oral
statement from her about the events that led to her injuries.  At this time, Julianna, despite her wretched
physical condition, was very alert and cooperative.  Her statement implicated appellant as her
assailant.  Detective Richards had his
notes transcribed into a typed statement. 
Julianna, however, did not sign this statement because both of her hands
were broken and bound with bandages.  At
appellant=s trial, Julianna testified that she did
not remember giving this statement to the police and could not remember who
inflicted her injuries.  

A jury convicted appellant of aggravated
assault causing serious bodily injury and sentenced him to twenty years= confinement in
the Texas Department of Criminal Justice, Institutional Division. Challenging
his conviction, appellant asserts that: (1) the Aadmissible@ evidence
introduced at trial is legally insufficient to support his conviction for
aggravated assault causing serious bodily injury; and (2) the trial court
committed reversible error in admitting Julianna=s unsigned
statement (Exhibit 19 ) and denied appellant his constitutional right to
confront and cross-examine witnesses used against him.  

II. 
Analysis

A.      Is the evidence legally insufficient to
support appellant=s conviction of aggravated assault
causing serious bodily injury? 

 








In his first issue, appellant argues that
the admissible evidence introduced at trial is legally insufficient to support
his conviction.  In evaluating a
legal-sufficiency challenge, we view the evidence in the light most favorable
to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The issue on appeal is not whether we, as a court, believe the State=s evidence or
believe that appellant=s evidence outweighs the State=s evidence.  Wicker v. State, 667 S.W.2d 137, 143 (Tex.
Crim. App. 1984).  The verdict may not be
overturned unless it is irrational or unsupported by proof beyond a reasonable
doubt. Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses= testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).  When faced with conflicting
evidence, we presume the trier of fact resolved conflicts in favor of the
prevailing party.  Turro v. State,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
If any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).  AIn assessing the
sufficiency of the evidence to support a conviction, a reviewing court must
consider all evidence which the jury was permitted, whether rightly or
wrongly, to consider.@  Johnson
v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (emphasis added).

A person commits aggravated assault if the
person commits an assault and the person causes serious bodily injury to
another.  Tex. Pen. Code Ann. ' 22.02(a)(1)
(Vernon Supp. 2004).  Bodily injury means
physical pain, illness, or any impairment of physical condition.  Tex.
Pen. Code Ann. ' 1.07(a) (8) (Vernon Supp. 2005).  Serious bodily injury means bodily injury
that creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of any body member or
organ.  Tex.
Pen. Code Ann. ' 1.07(a)(46) (Vernon Supp. 2004).

Appellant contends that the evidence is
legally insufficient because Julianna did not identify appellant as the
individual who caused her injuries; and there is no evidence that the injuries
sustained by Julianna meet the definition of Aserious bodily
injury.@  We disagree. 








There is ample evidence in the record to
show that appellant inflicted serious bodily injury on Julianna. Law
enforcement officers found Julianna in dire physical condition at the home she
shared with her children and appellant. 
Law enforcement officers were prompted to make a welfare call to the
family=s residence
because an anonymous caller was obviously concerned for Julianna=s safety and had
reason to believe she had been hurt or was in grave danger.  Appellant was the only person at the
residence at the time Sergeant Cleere arrived. Appellant  was uncooperative and refused to let Sergeant
Cleere enter the home.  He lied to the
officer about Julianna=s whereabouts, stating at one point that
she was picking the children up from school and later that she was shopping or
doing Asomething@ but that she was
not at home.  When the children arrived
on the school bus, appellant instructed them not to say a word to the
officers.  The nine-year old daughter, in
response to Sergeant Cleere=s question about
her mother=s welfare, answered, AI=m not supposed to
tell,@ giving the
officers good reason to suspect Julianna=s welfare was in
jeopardy.  When the officers entered the
home, they found Julianna battered and beaten all over her body.  She was unable to move without assistance and
was obviously in immense pain from her many injuries.  While hospitalized, Julianna gave a statement
to the police that implicated appellant. 
Although this statement was unsigned due to Julianna=s injuries and
although Julianna testified at trial that she did not remember giving this
statement, and could not remember who inflicted her injuries, the jury was free
to believe or disbelieve any portion of the witnesses= testimony.  See Sharp, 707 S.W.2d at 614.  When faced with conflicting evidence, we
presume the trier of fact resolved conflicts in favor of the prevailing party.  Turro, 867 S.W.2d at 47.  We conclude that based on the evidence in the
record, any rational trier of fact could have found, beyond a reasonable doubt,
that appellant was the individual who inflicted Julianna=s injuries.








We further conclude that the jury
rationally could have found that Julianna suffered injuries that easily meet
the definition of Aserious bodily injury.@  Though often a matter of degree, there must
be a meaningful distinction between Abodily injury@ and Aserious bodily
injury.@  Hernandez v. State, 946 S.W.2d 108,
111 (Tex. App.CEl Paso 1997, no pet.).  The determination that an injury qualifies as
serious bodily injury must be made on a case‑by‑case basis.  Id. 
In this case, Julianna=s injuries
required extensive medical treatment and left permanent damage.  Dr. Shao-Jen Chang, the treating emergency
room physician, testified that Julianna=s injuries were of
the sort that typically would leave someone permanently disabled.  Photographs of Julianna entered into the
record showed she suffered a very brutal beating that left serious injuries to
many different parts of her body. 
Julianna was treated for two broken arms, two broken legs, and multiple
contusions and bruises that were at various stages of healing.  All four of her extremities were placed in
casts or splints.  The medical evidence
demonstrated that Julianna lived a life of severe abuse which might have led to
her death but for the intervention of the anonymous caller and law enforcement
officers making the welfare check.  In
addition, there is evidence that some of Julianna=s injuries may
have been inflicted by a baseball bat, also introduced into evidence at
trial.  See Tex. Pen. Code Ann. ' 22.02(a) (Vernon
Supp. 2004) (stating that person commits aggravated assault if that person Acauses serious
bodily injury@ or Auses or exhibits a
deadly weapon@ while assaulting another person).  Dr. Chang testified that some of the injuries
Julianna sustained were consistent with blunt force trauma caused by some
object. 








The jury examined the photographs and
listened to the testimony at trial.  The
jury was free to  apply common sense,
knowledge, and experience gained in the ordinary affairs of life in drawing reasonable
inferences from the evidence.  Given the
extensive evidence of this savage beating, the jury rationally could have
determined that Julianna suffered serious permanent disfigurement simply by
viewing the photographs of her ghastly injuries and listening to the testimony
from Julianna=s treating physicians.  We conclude there is legally sufficient
evidence to support the conviction.  See
Brown v. State, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980) (finding
defendant committed aggravated assault where evidence showed victim=s disfiguration
and impairment was permanent unless medical attention was sought); Tinker v.
State, 148 S.W.3d 666, 671 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (holding that a diagnosis that if the injury of the
victim=s shoulder does
not heal properly, there may be permanent deformity, and long‑term pain
and disability, is sufficient to meet the definition of serious bodily
injury).  We overrule appellant=s first issue. 

B.      Did the trial
court commit reversible error in admitting Julianna=s statement (Exhibit 19)? 

 

In his second
issue, appellant contends that the trial court committed reversible error in
admitting Julianna=s unsigned statement (Exhibit 19) and
thereby purportedly denying appellant his right to confront and cross-examine
witnesses against him.  More
specifically, appellant asserts that, by admitting this exhibit through
Detective Richards= testimony, the trial court denied
appellant his constitutional right to confront and cross-examine witnesses used
against him.  

Appellant did not object on this basis at
trial and thus failed to preserve error on this issue.  The only objection appellant made in regard
to this testimony and exhibit was a hearsay objection:

The Court: Before we go any further
on this I would kind of like to know what we are going to hear.  We have this statement in and I=m not sure I could hear what she
was saying. 

The State: She said she doesn=t unequivocally admit that she made
the statement. She says she didn=t remember, Your Honor.

The Court: Okay. And you=re going her under which exception
to the hearsay rule?

The State: Well, I=m going toCunder Rule 613, the prior statement
of witnesses. She was shown a copy of the statement and asked if she made it to
Detective Richards on November 11, 2003, at the Huntsville Memorial Hospital. 

. . . 

The Court: That has been a long
time ago. Has anyoneChave you ever gone back and tried
to her toC

Detective Richards: No, sir.








The Court:Cto sign the statement? Has the
State ever gone back and tried to get her to sign this statement?

The State: No, Your Honor.  She had been talked to on several occasions.
There are other individuals that she has made statement to consistent [sic]
with what she said in her story until today. 

The Court: I really do hate to
break my rule. But I ought not to let this in but I am this time. But I want to
tell ya=ll [sic] something. I=m serious about this discovery
stuff. 

The State: Yes, sir.

. . .

The Court: This time. Not for you,
but because I think justice demands it.

The State: Yes, Your Honor.

The Court: I apologize to you,
Dale, for you not getting all of the discovery that you=re justly entitled to.

Defense Counsel: Thank you, Your
Honor. 

. . .

The Court: You want to ask him some
questions, Dale? 

Defense Counsel: I will just aks
him in front of the jury. 

The Court: Okay. And your exception
to the calling of this witness is duly noted in the record.    

Defense Counsel:
Also, I object under the basis of hearsay. It=s not a signed
statement of that witness so I don=t see any
exception under the Rules that this could come in. So I want to preserve that
error. 

During the testimony, and right before
admission of the statement through Detective Richards, appellant objected
again: 

The State:
State would offer into evidence State=s Exhibit No. 19.

Defense Counsel: Your
Honor, I previously entered my objections to this exhibit and I would like the
record to reflect that I have so. 

The Court: You have made proper objection and your objection will be
overruled. 

These are the only objections made at
trial in regard to this testimony and Exhibit 19.








Appellant=s complaint on
appeal is not that of hearsay, but that he was denied his constitutional right
to confront and cross-examine witnesses used against him.  Appellant made no objection to this testimony
based on an alleged violation of the Confrontation Clause.  To preserve error, there must be a timely,
specific objection.  See Tex. R. App. P. 33.1.  Even constitutional error may be waived by
failure to object at trial.  Briggs v.
State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).  A defendant waives his constitutional right
to confront witnesses if he does not object at trial.  Holland v. State, 802 S.W.2d 696, 700
(Tex. Crim. App. 1991); Thacker v. State, 999 S.W.2d 56, 61 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d). 
Although appellant objected on the basis of hearsay, this objection did
not preserve error on a Confrontation Clause claim.  See Saldivar v. State, 980 S.W.2d 475, 496
(Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).  Hearsay objections and objections to
violations of the constitutional right to confront witnesses are neither
synonymous nor necessarily coextensive.  Holland,
802 S.W.2d at 700; Thacker, 999 S.W.2d at 61.  Thus, appellant has waived appellate review
of his complaint.








Even if appellant
had preserved error on this issue, we would find no merit in his argument
because there was not a violation of the Confrontation Clause.  The Constitution does not permit the
admission of a testimonial statement of a witness who did not appear at trial
unless the witness was unavailable to testify and the defendant had a prior
opportunity for cross‑examination. Crawford v. Washington, 541
U.S. 36, 52, 124 S. Ct. 1354, 1365, 158 L. Ed. 2d 177 (2004).  However, when, as in this case, the declarant
appears for cross‑examination at trial, the Confrontation Clause places
no constraints at all on the use of her prior testimonial statements.  See California v. Green, 399 U.S. 149,
162, 90 S. Ct. 1930, 1937, 26 L. Ed. 2d 489 (1970).  The Confrontational Clause does not bar
admission of a statement so long as the declarant is present at trial to defend
or explain it.  Tennessee v. Street,
471 U.S. 409, 414, 105 S. Ct. 2078, 85 L. Ed. 2d 425 (1985).  Julianna=s unsigned
typewritten statement, given to police, was testimonial in nature.  But Julianna was present at trial and
testified.  Appellant, during his
cross-examination,  had the opportunity
to question Julianna about the statement she gave to the police.  Therefore, there was no violation of the
Confrontation Clause.  We overrule
appellant=s second issue. 

Having overruled both of appellant=s issues, we
affirm the trial court=s judgment. 

 

 

 

 

 

/s/      Kem
Thompson Frost

Justice

 

Judgment rendered
and Opinion filed April 13, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).